1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   MANINDER KAUR,                        Case No. 1:22-cv-00697-JLT-CDB (SS)

12               Petitioner,               **FINDINGS AND RECOMMENDATION
                                           TO DENY PLAINTIFF'S MOTION FOR
13        v.                               SUMMARY JUDGMENT; GRANT
                                           DEFENDANT'S CROSS-MOTION FOR
14   KILOLO KIJAKAZI, Acting               SUMMARY JUDGMENT
     Commissioner of Social Security,
15                                         (Docs. 17, 23)
                Defendant.
16

17

18        Plaintiff Maninder Kaur seeks judicial review of a final decision of the Commissioner of

19   Social Security ("Commissioner" or "Defendant") denying her application for disability insurance

20   benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the

21   parties' briefs, which were submitted without oral argument. (Docs. 17, 23). Upon review of the

22   Administrative Record (AR) and the parties' briefs, the Court will recommend that Plaintiff's

23   Motion for Summary Judgment be denied and the Commissioner's Cross-Motion for Summary

24   Judgment be granted.

25                                   **BACKGROUND**

26        On November 13, 2019, Plaintiff protectively filed a Title II application for Social

27   Security Disability Insurance (SSDI) which alleged disability beginning January 28, 2019. (AR

28   13, 205-208). Plaintiff's claim was initially denied on September 16, 2020 (AR 93-97), and

1   again upon reconsideration on March 13, 2021.  (AR 105-107).  Plaintiff filed a request for

2   hearing before an Administrative Law Judge (ALJ) on April 1, 2021.  (AR 108-109).  The ALJ

3   held the hearing on August 17, 2021, and Plaintiff appeared and testified.  (AR 29-46).

4   The ALJ issued an unfavorable decision on August 27, 2021.  (AR 10-28).  After

5   reviewing the evidence, the ALJ considered Plaintiff's claims using the five-step sequential

6   evaluation required by 20 C.F.R § 404.1520(a)(4).  At step one, the ALJ found that Plaintiff had

7   not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ

8   found that Plaintiff had osteoarthritis of the right knee, a severe impairment.  (AR 15).  While

9   finding that Plaintiff had medically determinable impairments (MDI) of obesity, diabetes,

10  hypertension, anxiety and depression, the ALJ concluded these were not "severe" impairments.

11  (AR 16-18).

12  The ALJ's findings concerning Plaintiff's anxiety and depression are particularly relevant

13  for the appeal at issue.  The ALJ noted that Plaintiff presented symptoms of anxiety and

14  depression following the death of her daughter and received treatment for her depression through

15  her primary care provider (PCP), Dr. Pannu. (AR 16, 399-414).   The ALJ noted that at the time

16  of the psychological consultative examination (provided by Dr. Livesay in August 2020), Plaintiff

17  reported she suffered from and was taking medication for depression.  In addition, Plaintiff

18  reported symptoms of crying and lack of motivation.  (AR 386).

19  The ALJ also noted that following the psychological consultative examination, Plaintiff

20  did not seek any additional or specialized mental health treatment.  Dr. Pannu's treatment notes,

21  which memorialized treatment some months after Plaintiff's psychological consultative

22  examination, reflect that Plaintiff denied anxiety and depression.  (AR 400, 403, 410, 416, 436).

23  Dr. Pannu's notes still list major depressive disorder in Plaintiff's treatment list, but also indicates

24  that Plaintiff was not taking any medications for her depression. (AR 400, 403, 406, 411, 416,

25  436).

26  The ALJ ultimately determined that Plaintiff's depression and anxiety medically

27  determinable impairments (MDIs), considered "singly and in combination," do not cause more

28  than a minimal limitation on Plaintiff's ability to perform mental work activities and are therefore

not severe.  (AR 17).  The ALJ reached this determination by considering the four broad functional areas of mental functioning listed in the "Paragraph B" criteria.[1]

The first functional area is understanding, remembering, or applying information. The ALJ found that Plaintiff has a mild limitation.  He supported his finding by referring to function reports where Plaintiff reported difficulty with memory but did not indicate difficulty with understanding or following instructions.  (AR 273-287, 296-304, 305-313).  The ALJ further relied on Plaintiff's demonstration during the August 2020 consultative psychological exam of low-average range intelligence.  (AR 386-392).

The next functional area is interacting with others.  The ALJ found that Plaintiff has no limitation. (AR 17).  The ALJ supported this determination by citing to the function reports, the testimony from Plaintiff's daughter in law and Plaintiff's testimony during the hearing where she indicated that she maintains relationships with family members.

The third functional area is concentrating, persisting, or maintaining pace.  The ALJ found that Plaintiff had a mild limitation in this functional area.  The ALJ cited to Plaintiff's consultative psychological examination, which indicates that Plaintiff was able to work slowly but persistently at a steady pace. (AR 388).

The fourth functional area is adapting or managing oneself.  The ALJ found that Plaintiff had no limitation in this area.  The ALJ noted that Plaintiff lives independently with her family and helps with the care of her grandchildren.  The ALJ further found that Plaintiff can obtain appropriate medical treatment as needed.  (AR 17).

---

[1] The "paragraph B criteria" evaluates **mental impairments** in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, **App. 1**. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.* An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." *Id.* And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited." *Id.  See, Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at n.7 (E.D. Cal. Feb. 9, 2023).

3

1   Since none of Plaintiff's medically determinable mental impairments caused more than

2   mild limitations in any of the paragraph B functional areas, the ALJ found that Plaintiff's anxiety

3   and depression impairments are non-severe.

4   At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal any

5   of the per se disabling impairments listed in 20 C.F.R. Pt. 404, Subptn P, App. 1. The ALJ

6   concluded that Plaintiff was able to perform a reduced range of medium work with additional

7   postural limitations.  (AR 19).

8   At step four, the ALJ determined that Plaintiff could perform her past relevant work

9   (PRW) as a packaging line attendant. (AR 23).  At step five, the ALJ determined that Plaintiff

10  could perform "other work" that exists in significant numbers in the national economy like linen

11  room supply worker, and laundry worker.  (AR 24).  The ALJ made a finding of "non-disability"

12  at steps four and five.

13  Plaintiff filed a request for review, which was denied by the Appeals Council on April 5,

14  2022. (AR 1-6).  After exhausting her administrative remedies, Plaintiff brough the instant action,

15  and seeks judicial review pursuant to 42 U.S.C. § 405(g).

16  **STANDARD OF REVIEW**

17  A district court's review of a final decision of the Commissioner of Social Security is

18  governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

19  Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

20  is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

21  evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

22  conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

23  equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

24  citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

25  consider the entire record as a whole rather than searching for supporting evidence in isolation.

26  *Id.*

27  In reviewing a denial of benefits, a district court may not substitute its judgment for that of

28  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

4

1    to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

2    2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

3    harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

4    nondisability determination."  *Id.* (quotation and citation omitted).  The party appealing the ALJ's

5    decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556

6    U.S. 396, 409-10 (2009).

### FIVE-STEP SEQUENTIAL EVALUATION PROCESS

8            A claimant must satisfy two conditions to be considered "disabled" within the meaning of

9    the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

10   activity by reason of any medically determinable physical or mental impairment which can be

11   expected to result in death or which has lasted or can be expected to last for a continuous period

12   of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

13   must be "of such severity that he is not only unable to do his previous work[,] but cannot,

14   considering his age, education, and work experience, engage in any other kind of substantial

15   gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

16           The Commissioner has established a five-step sequential analysis to determine whether a

17   claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

18   Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the

19   claimant is engaged in "substantial gainful activity," the Commissioner must find that the

20   claimant is not disabled.  20 C.F.R. § 416.920(b).

21           If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

22   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

23   C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of

24   impairments which significantly limits [his or her] physical or mental ability to do basic work

25   activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's

26   impairment does not satisfy this severity threshold, however, the Commissioner must find that the

27   claimant is not disabled.  *Id.*

28           At step three, the Commissioner compares the claimant's impairment to impairments

1  recognized by the Commissioner to be so severe as to preclude a person from engaging in

2  substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more

3  severe than one of the enumerated impairments, the Commissioner must find the claimant

4  disabled and award benefits.  20 C.F.R. § 416.920(d).

5       If the severity of the claimant's impairment does not meet or exceed the severity of the

6  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

7  functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's

8  ability to perform physical and mental work activities on a sustained basis despite his or her

9  limitations (20 C.F.R. § 416.945(a)(1)) is relevant to both the fourth and fifth steps of the

10  analysis.

11       At step four, the Commissioner considers whether, in view of the claimant's RFC, the

12  claimant is capable of performing work that he or she has performed in the past (past relevant

13  work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant

14  work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If

15  the claimant is incapable of performing such work, the analysis proceeds to step five.

16  At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is

17  capable of performing other work in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  In

18  making this determination, the Commissioner must also consider vocational factors such as the

19  claimant's age, education and past work experience.  *Id*.  If the claimant is capable of adjusting to

20  other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

21  416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a

22  finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

23       The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

24  180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

25  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

26  work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*

27  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

28

6

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for SSDI and SSI. (Doc. 1). She raises two issues for the Court's review.  (Doc. 17 p. 1).  First, Plaintiff claims that the ALJ's step two findings that her depression and anxiety are non-severe constituted harmful legal error. Second, Plaintiff claims that the ALJ's rejection of Dr. Livesay's MRFC is not supported by substantial evidence.

**A.      Whether the ALJ's step two findings regarding the "non-severity" of Plaintiff's depression and anxiety constitute harmful legal error.**

Plaintiff asserts that the ALJ committed legal error since he rejected the MRFC and RCF of every treating, examining, and reviewing physician on record.  (Doc. 17 p. 6-7).  Plaintiff further claims that the ALJ "took it upon himself" to formulate his own RFC.

At step two of the disability inquiry, the Commissioner determines whether a claimant has a medically severe impairment or combination of impairments.  *Smolen v. Chater*, 80 F.3d 1273, 1289, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987)).  In reaching this determination, the ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id*.  In addition, the regulations require "a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities . . ." Social Security Ruling (SSR) 85-28, at *4; *see Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  Thus, "[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing SSR 85-28). Nonetheless, "[t]he plaintiff has the burden of establishing the severity of the impairment." *See*, *e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial

1     burden of proving a disability in steps one through four of the analysis") (citations omitted).

2          In his step two analysis, the ALJ noted that Plaintiff had a psychological consultative

3     examination with Dr. Jerry Livesay in August 2020. During that examination, Plaintiff reported

4     depression and that she was taking medication for depression.  Plaintiff also reported symptoms

5     of crying and lack of motivation.  (AR 16, 386-392).

6          The Commissioner acknowledged that Plaintiff had not sought any additional or

7     specialized mental health treatment following the psychological consultative examination in

8     August 2020. Beginning months later, Dr. Pannu, Plaintiff's medical treatment provider, still

9     listed major depressive disorder in his medical notes but indicated that Plaintiff was not taking

10    any medications and denied suffering from anxiety or depression. (AR 17, 400, 403, 406, 410,

11    411, 416, 436).

12         Plaintiff argues that the Commissioner erred as all physicians on record, including

13    Plaintiff's treating physician, diagnosed her with major depressive disorder. *See* (AR 345 - 449).

14    However, a diagnosis alone does not establish severity. 20 C.F.R. § 404.1520(c). *See Verduzco v.*

15    *Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the appellant clearly does suffer from

16    diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those

17    impairments are 'severe').

18         Separately, Plaintiff points to certain inconsistencies in the record that purportedly would

19    trigger the ALJ's duty to further develop the record. (Doc. 17 p. 12).  For instance, Plaintiff points

20    to Dr. Livesay's report that she was taking psychiatric medication but did not specify what

21    medications she was taking in his August 2020 report.  (AR 387).  In addition, Plaintiff points to

22    Dr. Pannu's consistent diagnoses of "major depressive disorder" but nevertheless noted that

23    Plaintiff was not taking psychiatric medications.

24         Finally, Plaintiff points to Dr. Livesay's report and his remark therein that "[t]he claimant

25    is not an adequate historian due to her limitations and receptive English." Dr. Livesay's report

26    further notes that Plaintiff needed her son's assistance "to clarify communication." (AR 386).

27    She supports her contentions by citing to *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)

28    (holding that "it is a questionable practice to chastise one with a mental impairment for the

1   exercise of poor judgment in seeking rehabilitation.")

2     The Ninth Circuit holds that the Commissioner has a special duty to develop the record

3   fully and fairly, and to assure that a claimant's interests are considered, even when the claimant is

4   represented by counsel. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014); *see*

5   *Delorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (this duty is especially important when a

6   claimant suffers from a mental impairment).  However, it remains the claimant's "duty to prove"

7   that she is disabled and entitled to benefits.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.

8   2001).  This duty may require that the ALJ obtain additional information by, *inter alia*, contacting

9   treating physicians, scheduling consultative examinations, or calling a medical expert.  20 C.F.R.

10  §§ 416.912(e)-(f), 416.919a.  However, the ALJ's duty to develop the record attaches only when

11  there is ambiguous evidence or when the record is inadequate to allow proper evaluation of the

12  evidence.  *Mayes*, 276 F.3d at 459-60.

13    The Ninth Circuit draws a distinction between instances where the record indicates that

14  the failure to seek mental health treatment was attributable to the mental impairment as opposed

15  to the failure stemming from the claimant's own personal choices.  *Molina v. Astrue*, 674 F.3d

16  1104, 1113-1114 (9th Cir. 2012); *Gegan v. Kijakazi*, No. 1:22-cv-00005-GSA, 2023 WL

17  3304432, at * 5 (E.D. Cal. May 8, 2023).  Here, the ALJ found that Dr. Livesay's opinion was not

18  consistent with the record as a whole.  The ALJ cited to Dr. Pannu's records, who did have the

19  opportunity to regularly provide medical care to Plaintiff and noted that she repeatedly denied

20  symptoms of depression and anxiety.  (AR 22, 400, 403, 406, 410, 416, 436).  Under these

21  circumstances, the ALJ did not have a duty to further develop the record because the record was

22  neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Although Dr.

23  Livesay's report indicated that Plaintiff may be a bad historian, the record was sufficiently well

24  developed by Dr. Pannu's treatment notes to enable the ALJ to independently ascertain Plaintiff's

25  treatment history.  Evidence of conservative treatment is a valid basis for rejecting a Plaintiff's

26  claims of severe impairment.  *Tommasetti*, 533 F.3d at 1039-1040.  The ALJ may properly infer

27  that Plaintiff's depression was not severe given that she repeatedly denied symptoms and did not

28  take relevant medications.

1        Plaintiff also claims error since the ALJ rejected the mental residual functional capacity

2  (MRFC) and residual functional capacity (RFC) opinions of every physician of record and "took

3  it upon himself to formulate his own RFC." (Doc. 17 pp. 5-6).  At step two, the ALJ found that

4  Plaintiff had no more than mild limitation in any of the functional areas set forth in the paragraph

5  B criteria.  (AR 18).  Later, at step four, the ALJ found that Plaintiff had the ability to perform

6  medium work as defined in 20 C.F.R. 404.1567(c).  (AR 19).  The ALJ also reported that "the

7  undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to

8  any prior administrative medical finding(s) or medical opinion(s), including those from medical

9  sources."  (AR 20).

10        As noted by the Commissioner, the RFC is a legal decision expressly reserved for the

11  ALJ. *See* C.F.R. §§ 404.1527(d)(2); 404.1546(c); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

12  Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician to

13  determine [RFC]). "The ALJ is the final arbiter with respect to resolving ambiguities in the

14  medical evidence." *Tommasetti*, 533 F.3d at 1041-42.

15        The ALJ is not required to adopt the findings or opinion of a physician but rather is

16  charged with determining the RFC based on all the evidence on the record. *See* 20 C.F.R. §

17  404.1527 (d)(2) "Although we consider opinions from medical sources on issues such as . . . your

18  residual functional capacity. . . the final responsibility for deciding these issues is reserved to the

19  Commissioner."); *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ

20  is responsible for translating and incorporating clinical findings into a succinct RFC"). In

21  addition, the regulations provide that the agency "will not defer or give any specific evidentiary

22  weight, including controlling weight, to any medical opinion(s) or prior administrative medical

23  finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

24        The Court finds that the ALJ's RFC and MRFC determinations are supported by

25  substantial evidence in the record.  Plaintiff has not demonstrated that the ALJ was required to

26  further develop the record.  The ALJ is not required to adopt any medical provider's RFC

27  determination and ultimately is responsible to make an RFC determination with the record before

28  him, which, here, was adequately developed.

1    **B.**     **Whether the ALJ's rejection of Dr. Livesay's MRFC is supported by substantial**

2              **evidence.**

3              Plaintiff next asserts that the ALJ's rejection of the findings of Dr. Livesay, the only

4    examining psychiatric specialist, regarding Plaintiff's psychiatric limitations, undermines the

5    ALJ's supportability and consistency analysis.  (Doc. 17 pp. 15-20).  Dr. Livesay opined that

6    Plaintiff's ability to perform simple and repetitive tasks was mildly impaired; her ability to

7    perform detailed and complex tasks was moderately impaired; her ability to accept instructions

8    from supervisors was unimpaired; her ability to interact with coworkers and the public was mildly

9    impaired; her ability to perform work activities on a consistent basis without special or additional

10   instruction is mildly impaired; her ability to maintain regular attendance and complete a normal

11   workday/workweek without interruptions from a psychiatric conditions was moderately impaired.

12   Dr. Livesay found that Plaintiff's ability to deal with stress in the workplace was markedly

13   impaired. (AR 22, 388-390).

14            The ALJ found that Dr. Livesay's opinion was supported by his examination findings.

15   However, the ALJ found that the findings were not consistent with the records as a whole and

16   pointed to Plaintiff's denial of anxiety and depression when she saw Dr. Pannu. (AR 22).  The

17   Court of Appeals recently provided guidance in regard to court review of medical opinions:

18            "The most important factors" that the agency considers when evaluating the
             persuasiveness of medical opinions are "supportability" and "consistency." 20
19           C.F.R. § 404.1520c(a). Supportability means the extent to which a medical
             source supports the medical opinion by explaining the "relevant . . . objective
20           medical evidence." *Id.* § 404.1520c(c)(1). Consistency means the extent to
             which a medical opinion is "consistent . . . with the evidence from other medical
21           sources and nonmedical sources in the claim." *Id.* § 404.1520c(c).

22   *Woods v. Kijakazi*, 32 F.4th 785, 791-792 (9th Cir. 2022).  An ALJ cannot reject a doctor's

23   opinion without providing an explanation supported by substantial evidence. *Id.* The ALJ must

24   explain how persuasive he finds all the medical opinions from each doctor or source and how he

25   considered the supportability and consistency factors when reaching his findings. *Id.*; 20 C.F.R. §

26   404.1520c(b)(2).

27            The ALJ included the supportability and consistency factors in his analysis. In his

28   consistency analysis, the ALJ compared Dr. Livesay's opinion with Dr. Pannu's treatment notes.

In addition to reviewing her Medical Source Vendor questions, Dr. Livesay examined Plaintiff on August 8, 2020. (AR 386). He assessed that Plaintiff had a mild impairment in performing simple and repetitive tasks, moderate impairment in the ability to perform detailed and complex tasks, no impairment in the ability to accept instructions from supervisors, mild impairment in the ability to interact with coworkers and the public, moderate impairment in the ability to maintain regular attendance in a normal workday without interruptions and a marked impairment in the ability to deal with the usual stress encountered in the workplace. (AR 390).

In contrast, in a check-off report signed on May 21, 2021, Dr. Pannu assessed that Plaintiff had no limitations in her ability to understand and remember, concentration and memory, social interaction, and adaptation. (AR 446-447). The ALJ discounted Dr. Livesay's opinion because it was inconsistent with Dr. Pannu's findings, and the record as a whole. (AR 22). Dr. Pannu's medical treatment notes, which were drafted after Dr. Livesay's report, indicate that Plaintiff had not been taking medication and that she repeatedly denied having anxiety and depression. (AR 435-445).

After considering the ALJ's reasons for rejecting Dr. Livesay's opinion, and the record as a whole, the Court finds that the ALJ's rejection is supported by substantial evidence. It was reasonable for the ALJ to discount Dr. Livesay's opinion, particularly because Dr. Pannu, Plaintiff's PCP who monitored Plaintiff's depression for over a year after Dr. Livesay's report, regularly documented that Plaintiff denied anxiety and depression and did not take any medications for her conditions. "The ALJ is permitted to consider lack of treatment in his credibility determination." *Burch*, 400 F.3d at 682. The ALJ's finding that Dr. Livesay's opinion is inconsistent with the record is supported by substantial evidence.

### CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, the undersigned recommends that the Court DENY Plaintiff's Motion for Summary Judgment and GRANT the Commissioner's Cross-Motion for Summary Judgment.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within fourteen**

**(14) days** from the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 26, 2023**                          _____
                                                    UNITED STATES MAGISTRATE JUDGE